[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
The attached pages 12a, 12b, and 12c are to be added to this court's decision of September 7, 2000. These statutes were inadvertently left off.
The court's finding of facts and its analysis of those facts in relation to the allegations of Count Three encompasses both C.G.S. §14-65e, et. seq. and C.G.S. § 38a-355.
Attached also is page 14, corrected as to the first full sentence on that page. The word "understanding" should be "undertaking". The corrected sentence reads as follows:
It was akin to a joint undertaking.
Hennessey, J.
Count three alleges a violation of C.G.S. § 14-65e, et. seq., as follows:
CT Page 13169 Sec. 14-65f. Motor vehicle repairs, written or oral authorizations. Estimates. Claims. (a) Prior to performing any repair work on a motor vehicle, a motor vehicle repair shop shall obtain a written authorization to perform the work, on an invoice signed by the customer, which includes an estimate in writing of the maximum cost to the customer of the parts and labor necessary for the specific job authorized. A repair shop shall not charge for work done or parts supplied without a written authorization or in excess of the estimate unless the customer gives consent orally or in writing.
 (b) If the repair shop is unable to estimate the cost of repair because the specific repairs to be performed are not known at the time the vehicle is delivered to the repair shop, the written authorization required by this section need not include an estimate of the maximum cost of parts and labor. In such a case, prior to commencing any repairs, the repair shop shall notify the customer of the work to be performed and the estimated maximum cost to the customer of the necessary parts and labor, obtain the customer's written or oral authorization and record such information on the invoice.
 (d) No repair shop shall have a claim against a motor vehicle for repairs, other than for repairs actually performed and authorized, in an amount greater than that authorized by the customer under the provisions of sections 14-65e to 14-65j; inclusive.
 Sec. 14-65g. Waiver of estimates. Record of authorizations and of required information. Estimate of charges for diagnosis. (a) A customer may waive his right to the estimate of the costs of parts and labor required by section 14-65f, only in writing in accordance with this section. Such a waiver shall include an authorization to perform reasonable and necessary repairs to remedy the problems complained of, at a cost not to exceed a fixed dollar amount. The waiver shall be signed by the customer and the customer shall be given a fully completed copy of the waiver at the time it is signed. No repair shop shall use waivers to evade its duties under sections 14-65e
CT Page 13170 to 14-65j, inclusive.
 (d) Each repair shop shall maintain a written record of oral consents and authorizations, which may be recorded on the invoice.
 (e) Prior to performing any repairs on a customer's vehicle, a repair shop shall record on the invoice in writing the following information: (1) The name and address of the customer and the telephone number at which the customer may be reached during normal working hours; (2) the date and approximate time the customer's vehicle was delivered to the repair shop; (3) the year, make and registration number of the customer's vehicle; (4) the odometer reading on the customer's vehicle; and (5) the specific repairs requested by the customer. If the customer has not requested specific repairs, the shop shall record a brief description of the nature of the problem that requires repair.
 Sec. 14-65h. (Formerly Sec. 14-65c). Invoice requirements for motor vehicle repair work. Return of replaced parts. (a) All work done by a motor vehicle repair shop, including sublet repair work under warranty, shall be recorded on an invoice which shall specify the name and address of the repair ship, describe all service work done and parts supplied and state the cost of such service work and parts supplied, separately itemized. If any used parts are supplied, the invoice shall clearly state that fact. If any component system installed is composed of new and used parts, such invoice shall clearly state that fact. One copy of the invoice shall be given to the customer and one copy shall be retained by the motor vehicle repair shop. Any warranty made by a repair shop with respect to any repair work performed shall be stated in writing. If such written warranty does not include the cost of both parts and labor, it shall specifically state which is excluded from the scope of such warranty.
 (b) The motor vehicle repair shop shall make available to the customer, if requested before or at the time the vehicle is returned to the customer, all replaced parts, components or equipment. If the repair shop is required to CT Page 13171 return such parts, components or equipment to the manufacturer or other person under any warranty or rebuilding arrangement, the repair shop shall make them available to the customer for inspection only.
 Sec. 14-65j. False statements. Charges for repairs not performed. Completion of repairs. (a) No repair shop shall make any statement to a customer which it knows or should know to be false or misleading. Such statements include, but are not limited to, statements as to the necessity of repairs, the condition of the customer's vehicle, and whether particular repairs have been performed by the shop.
 (b) No repair shop shall charge a customer for repairs which have not been performed.
parts would cost; that Coleman himself would attempt to seek out parts. It was akin to a joint undertaking. During the months that the car was with J G, Coleman was almost a daily visitor. Not once was there any indication that Coleman had a problem with this arrangement.
The plaintiff's reliance on CGS § 38a-355 both as to its provisions regarding a written estimate and notice as to the kind of replacement parts used is misplaced in the context of the instant case. Nor is there a basis for a per se argument which would bootstrap Coleman into a CUTPA claim. Coleman let twenty months go by without once raising any question about the time the work was taking and the quality of the work done. Pursuant to the parts and labor arrangement Coleman advanced money as needed for parts and when his Workers' Compensation claim came through paid off the $4,000 which remained to be paid.
Coleman was able to get an estimate from Stanley's Auto body because replacement parts were not a factor. With J G replacement parts were an unknown cost factor. This was explained to Coleman and he accepted the fact that no estimate could be provided because of the nature of the body work involved